STATE *ex rel.* WILLIAM WERKMAN, Petitioner, *v.* WILLIAM BISHOP, State Treasurer, Respondent.

*Union Military Bonds.*—By the act of February 10, 1865, (Sess. Acts 1865, p. 56, § 31,) and the ordinance of the Convention of April 8, 1865, § 23, an appropriation was made for the payment of Union Military bonds and of the Missouri Militia, in the first class. By the act of February 15, 1865, (Sess. Acts 1865, p. 61,) the bonds were properly presented to the Auditor, to compute the principal and interest due, and draw his warrant upon the Treasurer for the payment of the bonds presented for redemption.

*Petition for Mandamus.*

*Ewing*, *Smith*, and *Krum & Decker*, for petitioner.

I. That under the statutes regulating the duties of the offices of the Treasury department, the Treasurer cannot refuse to pay any warrant drawn upon an appropriation or fund existing, unless there is some defect apparent on the warrant. In other words, the Auditor is the officer charged with auditing, adjusting and settling all claims against the State ; and it is the duty of the Treasurer to disburse the money on such warrant drawn according to law.

He has no power to control the Auditor ; he has no power to re-audit, re-adjust and unsettle the warrants. The means to investigate all claims are given alone to the Auditor. If the Treasurer wilfully fails to pay a warrant lawfully drawn, he is liable to the holder for four times the amount of the warrant. (Treasury, ch. II., R. C. 1855.)

II. That the fund (Union Military fund) upon which the warrant is drawn is sufficiently certain ; it is unnecessary to state in the body of the warrant for what particular service it is drawn. This is according to the established custom of the office of the Treasury.

III. That the Union Military fund created under the act of March 9, 1865, and regulated under the subsequent acts of the Legislature, is pledged to the redemption of the Union Military bonds, and afterwards for the arrears due the

Enrolled militia, and cannot be controlled for the purpose of organizing, equipping, subsisting or paying the Missouri militia, which is a separate organization.

That the ordinance of the Convention under which this power to subvert this fund is supposed to exist, has expressly provided that the General Assembly shall hereafter make provisions for the pay of said militia.

That no money can be drawn upon the Treasury *except* upon appropriations made by law, and there is not anywhere any appropriation made for the benefit of this new militia. That the old Enrolled militia for which provision has been made, after the redemption of the bonds, is entitled to be paid out of said fund.

IV. The act affirmatively provides that all bonds to be redeemed shall be redeemed by warrants drawn by the Auditor, and thereby overrides the prior statute. That the statute of March 9, 1863, creating these bonds, making them payable at the office of the Treasury, is not inconsistent with the statute of Feb. 15, 1865, which provides that the Auditor shall draw his warrant therefor. In order to draw his warrant for the bond, the bond must be left at his office. This act relating to the drawing of warrants for the Union Military bonds, thus provides an entirely *new mode of redemption*, which is inconsistent with the plan heretofore adopted.

V. The Constitution and laws of the State provide that no warrant shall be drawn except after an appropriation made by law, and that every warrant shall specify the fund out of which it is payable. From this it follows that the officer charged with the duty of drawing the warrant, is directed to make the warrant payable out of some existing fund; and it must be for expenses for the payment of which some appropriation has been heretofore made by law. Where there is no appropriation, the Auditor gives his certificate, and this certificate comes before the next General Assembly. (R. C. 1855.)

Under this we contend that no appropriation has been made to pay out any money from the Treasury to the Mis-

souri militia, created by the act of Feb. 15, 1865, and by the ordinance of State Convention.

VI. A brief examination of the statutes will show that the General Assembly never contemplated the expenditure of the Union Military fund for the militia. The act of 1863 creates this fund, and provides that the Enrolled Missouri militia shall be paid by bonds, there being no appropriation in that act for the money of the Treasury. The fund is created and pledged to the redemption of the bonds after they are paid out to the militia.

The first section act of 1863 provides that the bonds shall be payable at the office of the Treasurer. The act of 1863–4 (adjourned) provides for the redemption of bonds at their face only; and the only object of the last act was a temporary one, and expired when the bonds matured by its own limitation. It was a bid by the State to induce bondholders to accept less than the whole amount to which they would be ultimately entitled, by offering to pay them before maturity. But the act of 1863, § 1, provides that a new mode of redemption shall be employed *by warrant* of the Auditor. By the third section of same act, all provisions of prior acts inconsistent with this last act are repealed.

There is now no mode of redeeming bonds with interest except upon a warrant of the Auditor. The Auditor can only draw this warrant when there is money in the Treasury; the Auditor is made the judge of the question. He is to compute the interest, and therefore they must be presented to him. There is no law or reason to require that they shall first be presented to the Treasurer. The public notice applies only to redemption of bonds redeemed without interest.

It would be strange, indeed, if the State should, in addition to the full payment of bonds and interest, be required to notify her creditors to receive their money.

(For brief of R. F. Wingate, for respondent, see State *ex rel.* H. W. Long, Petitioner, v. Wm. Bishop, State Treasurer.)

HOLMES, Judge, delivered the opinion of the court.

William Werkman, the relator, was the holder of certain Union Military bonds, issued in pursuance of the act of the General Assembly, approved March 9, 1863, (Laws of 1863, p. 25,) which, on the 6th day of July, 1865, he presented to the State Auditor for computation of interest under the act of February 15, 1865. (Laws of 1865, p. 61.) The Auditor made the computation and drew his warrant of that date for the amount of the bonds presented, payable to the relator or bearer out of the Union Military fund, with a memorandum at the bottom, as follows: " P. $21, I. 2.20=$23.20 ;" and the relator went to the office of the State Treasurer, respondent, with the bonds and the warrant, which he presented to the Treasurer and requested payment thereof. The Treasurer refused payment, and by way of justification alleges in his return to the alternative writ of mandamus, that the warrant was not drawn as the law requires ; that there was a large sum still due the militia of the State for services actually rendered prior to the adoption of the ordinance of the late State Convention, and that until the indebtedness of the State to the militia is fully discharged, the Union Military fund cannot be applied to any other purpose ; that the relator should have presented his bonds at the Treasury for redemption before taking them to the Auditor ; and further, that the bonds were not entitled to redemption, except in pursuance of notice to be given by the Treasurer as provided in the act of Dec. 19, 1863. (Laws of 1863-4, p. 15.)

By the first section of the act to provide " for the payment and support of the Enrolled militia," (Laws of 1863, p. 26,) the Union Military bonds thereby authorized to be issued were made payable and redeemable at the office of the Treasurer in Jefferson City, and, by the seventh section of the act, " all bonds redeemed, together with interest thereon, would be charged to the account of the Union Military fund," and cancelled ; and when cancelled, carefully filed and preserved in the office of the Treasurer : and by a joint reso-

lution of the General Assembly, approved February 13, 1864, (Laws of 1863–4, p. 102,) the Governor was authorized to appoint a committee from time to time, to count and destroy the Union Military bonds so redeemed and in the hands or possession of the Treasurer. These bonds were to be issued in sums of one, three, five, ten and twenty dollars, printed in the usual manner of bank notes, and in the form of warrants, payable to bearer at the office of the Treasurer out of the Union Military fund, countersigned by the Auditor and signed by the Secretary of State. The same act created a Union Military fund which was pledged for the payment of these bonds, and was to be set apart by the Treasurer for that purpose only, and paid out under its provisions. By the act of December 19, 1863, (Laws of 1863–4, p. 15,) the Treasurer was authorized to place on deposit at the Bank of the State of Missouri at St. Louis, any money in the Treasury to the credit of this fund, to be used in the redemption of these bonds at their face; and he was required to give notice of the time and place of such redemption, specifying the class of bonds that would be redeemed, and to take up the same in the order of the date of their issue, to be cancelled as before. The thirty-first section of the act "for the organization and government of the Missouri militia," approved February 10, 1865, (Laws of 1865, p. 56,) was substantially, and indeed almost literally, re-enacted in the late Convention ordinance of the 8th of April, 1865; and it provides that the proceeds of certain taxes therein authorized to be levied, should be paid into the Treasury to the credit of this same Union Military fund, and that out of such fund should be paid, first, "All sums now due the Enrolled Missouri militia for services rendered, and Union Military bonds now outstanding or hereafter issued; and, second, all expenses incurred according to law and audited by the proper officers, and appropriations for military purposes, as other claims against the State." (Ord. of Conv. of 1865, § 23.)

The objections of the Treasurer (respondent) to the pay-

ment of the bonds presented in this case resolve themselves substantially into these two, that the warrant was not "drawn upon the Treasury according to law (R. C. p. 1547), and that it was not drawn upon a fund " previously appropriated by law" for that purpose, and to be paid in that manner. (Rev. Stat. 1855, p. 1545 ; Laws of 1863–4, p. 15.)

On a general view of these acts, it is apparent that they were intended to create a peculiar class of demands against the State, and indeed a kind of money not exactly of the character of a circulating medium, but bonds in the form of bank notes, and in the shape of warrants drawn by the Auditor upon the Treasurer of the State, and they are made redeemable and payable at his office; and, at the same time, a special fund is created and set apart in the Treasury for the express purpose of redeeming these bonds.   It has been contended that the bonds are merely demands against the State, and that, like all other demands upon the Treasury, they should be presented to the Auditor for examination, allowance, and designation of the particular fund appropriated by law for the payment of them ; and that the Treasurer had no further duty, when a warrant was presented to him for payment, than to see that it was drawn in proper form, and upon some fund of his office which had been appropriated by law for the payment of demands of that nature.

This would seem to be a nearly correct statement of their respective duties and functions in general; but we have here a series of special statutes which must be interpreted by themselves, and the subject must be governed by the peculiar provisions of these acts.   And as well from the nature and form of these bonds, and the reason of the thing, as by the literal terms of the act, it is plain that they were not to be paid as ordinary demands against the State, but directly by the Treasurer at his office.   When paid, he is expressly required by the act to cancel them, and carefully to file and preserve them in his office.   And a further provision is made by the joint resolution of the General Assembly, for a committee to be appointed by the Governor to see them finally

destroyed, the Treasurer receiving a voucher and a credit for them. They bore interest, and when redeemed the interest also had to be computed and paid by the Treasurer; but the paid bonds would be none the less a sufficient voucher in his hands, on that account, for both principal and interest.

So the matter stood until the passage of the act of February 15, 1865, (Laws of 1865, p. 61,) which provided that the Auditor should compute and allow the interest on the bonds whenever presented for redemption, and should draw his warrant for the amount of the bonds presented and interest, when there should be a sufficient amount of money in the fund available for their redemption.

It has been argued on the one side that it belongs to the Auditor under this act to determine when there is money available in the fund and when a warrant should be drawn; and on the other, that this matter could be adequately known only to the Treasurer, and therefore, that, in accordance with the express words of the former act, the bonds were still to be first presented for redemption to him at his office, in order that he might determine the question of a sufficiency of funds, before the bonds should be taken to the Auditor for a computation of interest and a warrant. We think this dispute to be more a matter of form than substance. Undoubtedly, the bonds are to be redeemed and paid at the office of the Treasurer; but before that can be done, they must be taken to the Auditor for a computation of the interest, and a warrant must be drawn for the amount of principal and interest, which the Treasurer is to pay. The bonds remain in the hands of the holder until paid; the Auditor will take a receipt and keep an account of his warrants; and the bonds and the warrant must be delivered up to the Treasurer when paid. This is a sufficient presentation for redemption, and we see no useful object or purpose to be answered by requiring any other presentation to the Treasurer.

It is further objected that these bonds can only be re-

deemed in pursuance of the notice and other provisions of the act of December 19, 1863. A very slight attention to the scope of that act is enough to make it clear that all its provisions on this subject relate exclusively to the particular deposit therein required to be made at the Bank of the State of Missouri, of the moneys then in the Treasury to the credit of this fund, or thereafter to be paid in, to be used in the redemption of Union Military bonds at their face; that is, we may suppose, without interest. But admitting that the Treasurer has power under that act to dispose of the funds in that way, if he is able to do so, it by no means follows that such is the only way in which the bonds can be redeemed and paid; the other laws still remain in force, and the redemption may go on at the Treasury as before, when there is money to answer the demands that are made. The respondent does not answer that he has no funds.

A further objection is, that a large sum is still due the militia for services rendered prior to the ordinance of the late Convention, and that the militia are entitled to priority of payment and of this fund; and this pretension appears to be founded in part upon the last clause of section twenty-three of the ordinance of April 8, 1865, in these words: " and second, all expenses incurred according to law and audited by the proper officers, and appropriations for military purposes, as other claims against the State."

First, it may be observed, that a slight correction of the punctuation would add much to the perspicuity of this clause, and help to make its meaning clear. Omit the comma after "officers," and include the words "incurred according to law and audited by the proper officers," in a parenthesis, and it will be seen at once that the true meaning is, that all expenses and appropriations for military purposes (duly audited) are to be paid out of this fund, secondly in order of priority, as other claims against the State are audited, allowed and paid. But first, in order of priority, are to be paid "all sums now due the Enrolled Missouri militia for services rendered and Union Military bonds now outstanding

or hereafter issued." Here nothing can be plainer than that the Enrolled militia who have not been paid, and Union military bonds which have been issued for the express purpose of paying that meritorious class of the public creditors, stand together in the first class in the order of priority, but without preference as between them, and that they are to be fully paid out of this fund, which was created for their especial benefit, before any part of it can be applied to the second class of claims; namely, expenses and appropriations for military purposes in general, which are to be audited and allowed and paid as other claims against the State, but out of the balance, if any remaining, of this special fund.

We are satisfied that such is the true meaning and intent both of the ordinance of the Convention and the act of February 10, 1865. It results from this view, that here was a fund duly appropriated by law and set apart in the Treasury for the purpose of redeeming these bonds and paying such warrants of the Auditor as should be drawn according to law for that object and upon that fund.

It only remains to consider whether the warrant in this instance was drawn in due form of law. That it was drawn by authority of law, has already been shown. And for the matter of form, we do not see but that it contains every essential requisite of a valid warrant in such case. It names the holder of the bonds presented as the payee; it is drawn for the total sum of principal and interest due on those bonds, with the several amounts of each noted separately; and it is drawn payable out of the Union Military fund, and presented to the Treasurer in company with the bonds themselves. There can scarcely be room for doubt that this was sufficient to inform the Treasurer on which particular fund the warrant was drawn, and the purpose for which it was drawn, so as to enable him to judge and know whether or not a fund of that kind had been duly appropriated by law for the payment of demands and warrants of that nature; and this was enough for him to know. Neither can there be any doubt that this warrant and the bonds, if they had

been paid by the Treasurer when so presented, would have been an ample voucher for his protection in a settlement of accounts.

We are of opinion that the warrant should have been paid, and accordingly the. peremptory mandamus will be ordered. The other judges concur.